We'll hear argument next in 20-1271, KEYnetik, Inc. v. Samsung Electronics, Inc., Mr. Halderman. Good morning. May it please the Court, my name is Mark Halderman from Armstrong Teasdale, here on behalf of Appellant KEYnetik, Inc. The primary dispute for the Court to resolve is whether the Board erred in reaching its obviousness determinations by applying, at best, the broadest possible interpretations of the orientation detector and the sequence limitations of the 1 in 6 patent, identified as numbers 1 and 2 on page 7 of KEYNETIK's blue brief, rather than their broadest reasonable interpretations consistent with the specification as required by this Court. The Board is required to interpret the claims consistently with the specification, not assess whether Samsung's overly broad reading of the terms were expressly precluded as it did throughout its decision. The Board's construction of the orientation limitation is impermissibly broad for four main reasons. First, the Board interpreted each as referring to one or more slow motion phases without any intrinsic evidence that its usage departs from its ordinary meaning of two or more. Second, it interpreted the singular word orientation as permitting the detection of multiple orientations during a single slow motion phase. Third, it reads the term orientation condition out of Claim 12 and the specification by allowing multiple detected orientations during a single phase. And finally, it improperly discounts Figure 3 and its discussion specification, which confirms that the limitation requires the detection of orientation conditions for two or more slow motion phases. So what is your basis to say that each always means two or more? Just dictionary definitions? Well, we have introduced two. We had two separate dictionary definitions. We had a Federal Circuit decision that also interpreted each as meaning two or more, as well as our experts' testimony. Now Samsung, on the other hand, has only its experts' testimony and has pointed to absolutely no evidence that it could mean one or more. Okay, go ahead. Likewise, the Board's construction of the sequence limitation is impermissibly broad because, first, it reads the claim language configured to maintain a sequence with each orientation being limited to a slow motion phase out of the claim. It reads the requirement of an intermittent fast motion phase out of the claims, and it also discounts that during prosecution, Kinetic distinguished prior art that allowed events based on all motion phases and was not limited to orientations for slow motion phases, concluding instead that limiting the sequence by mere happenstance, which the prior art could also do, is sufficient. Recognizing the inherent weakness of its arguments in the record, Samsung concocts at least two new arguments, a zero article argument and a claim 11 differentiation argument, and introduces extra record evidence, tactics that are not permitted by this court and should be discounted. When the 106 patent is properly interpreted, consistently with the plain claim language and the teaching of the specification, the asserted combinations do not teach the disputed limitations. Contrary to the 106 patent, Linjama does not teach the detection of orientation for any slow motion phase, let alone for two or more slow motion phases. But rather, Linjama receives a series of orientation signals that are uncorrelated to any motion phase. Indeed, the Linjama orientation signals, for them to be limited to a slow motion phase, the Linjama device must remain stationary. Again, contrary to the 106 patent, which requires motion, if the Linjama device does indeed move, it would detect fast motion orientations, and Linjama teaches no mechanism to preclude such fast motion orientations from the sequence. Do we have to agree that all of these errors that you claim occur in the claim construction occurred in order for us to conclude that the claim construction is wrong? No, you do not, Your Honor. I believe if any of these interpretations are ruled in our favor, that SAMHSA cannot prove that the asserted references disclose the 106 patent. Because if you agree with us that there are two slow motion phases, petitioner's embodiment only discloses one. If you agree that orientation is detected for the phase, rather than merely at an instant in time during the phase, Linjama, again, does not disclose detecting orientation for a phase. And the same thing with the sequence limitation. Linjama is not configured to limit at all, so if you agree with us there, again, they lose. I believe that was all. The Board departed from the plain claim language and the teaching of the specification in construing the orientation detector limitation as permitting the detection of multiple orientations during a single slow motion phase. But the orientation detector limitation recites detect orientation singular for each slow motion phase. The proper, broadest, reasonable interpretation of the plain claim language that is consistent with the specification is detect orientation conditions representative of two or more slow motion phases. Contrary to the BRI of the term, the assertive prior art references teach the detection of multiple orientation signals during a single phase are not representative of the orientation of the phase. To reach its erroneous construction, Samson asks the Court to depart from the ordinary meaning of the term each, which requires two or more slow motion phases, and upheld the Board's erroneous interpretation that it permits one single slow motion phase. Despite multiple dictionary definitions and this Court's interpretation that each refers to two or more, the Board agreed with Samson's conclusory expert opinion that each can mean one or more. Kinetic's interpretation is further confirmed by Figure 3, shown on page 10 of Kinetic's Blue Brief, and its related discussion that states that the signal processing will identify the gesture as long as two orientation conditions intermitted by motion conditions are met. Further, the Board's interpretation of the orientation detector limitation requires the Court to agree that the claim term orientation, which is singular, permits detection of multiple orientations during or within a single phase, rather than for the phase as recited in the claims. Samson asks the Court to ignore that the subsequent limitation, the sequence limitation, maintains the detected orientations, plural, confirming that the previous use of orientation is singular. Further, the Board's construction is inconsistent with the use of the term orientation condition in Claim 12, an argument which the Board failed to address in its final written decision. In Claim 12- Mr. Holder? Yes, Your Honor. May I please interrupt? In the previous case, there was a distinction drawn between the broadest possible interpretation and the broadest reasonable interpretation. You have drawn the same distinction for purposes of this appeal. My question is, is the Board's decision defensible as the broadest possible interpretation? The reason why I ask that is that in the previous case, a distinction was made between the two, arguing that the broadest reasonable interpretation should be given because the broadest possible interpretation would have frustrated the purpose of the invention. And I didn't hear any argument being made here that the Board's interpretation frustrated any purpose of the invention. Your Honor, yes, it does indeed frustrate the entire teaching of the patent. For example, in Column 7, starting at Line 25, by using a sequence of orientation conditions of a handheld device, the signal processing generates a fault-resilient command, absent complex analysis during periods of fast motion. The presence of one or more periods of fast motion serves as confirmation that the sequence is the product of intentional user actions. So under the Board's broadest possible interpretation, which completely discounts the specification, this fault-resilient technique is completely read out of the claims. Thank you. The Board's construction is also inconsistent with the use of the term orientation condition in Claim 12, which the Board failed to address in the final decision. In Claim 12, a preceding limitation recites that an orientation condition, not an orientation signal or measurement, is what the invention detects. The specification defines orientation condition as sustained values of the X, Y, and Z sensor data within certain limits over a predefined length of time. Such sustained values correspond to a single orientation, such as orientation face up. Samsung asked the Court to read the term orientation out of Claim 12 and the specification. Instead, Samsung contends that individual orientation signals, O1 and O2 in Samsung and the Board's example, can be detected orientations. However, individual orientation signals, each for an instant in time, T1 and T2 in Samsung and the Board's example, cannot have sustained values. Samsung and the Board failed to read the claims consistently with the term and instead require a strained reading that ignores the term entirely. Figure 3 confirms that only a single orientation condition for each slow motion phase as a whole is detected, despite each such phase having small variations in the X, Y, and Z sensor reading. Indeed, the specification describing Figure 3 explicitly recites there are two multiple orientation conditions detected, including viewing the visual display, 352, and maintaining the handheld in the final position, 354. Nowhere does a patent teach or even suggest multiple orientations can be detected during or within a single phase. The Board also improperly construed the sequence limitation, allowing the claimed sequence of the detected orientations to be limited to a slow motion phase, simply because the device never moved by mere happenstance, rather than being limited by the invention itself. But the invention itself must preclude orientations detected during fast motion from being maintained in sequence. Indeed, the claims are configured to maintain a sequence of the detected orientations with each orientation in the sequence being limited to a slow motion phase. Samsung ignores that the 106 patent requires fast motion. A constant stream of sustained motion data would be identified by the motion detector as a single slow motion phase, and consequently would be detected by the orientation detector as a single orientation condition. Without an intermittent fast motion phase, there simply cannot be a sequence of orientations, and finding it otherwise would eviscerate a fault-resilient technique of the invention. During prosecution... Is Mr. Haldeman's time expired? Yes, Your Honor. Okay. Thank you, Your Honor. All right. We'll give you two minutes for rebuttal. Thank you, Your Honors. Can you hear me? Yes. Great. Good morning, Your Honors. May it please the Court. The Board correctly construed the claims using the broadest reasonable interpretation standard that applies here. How do you get around the fact that each has a common usage, and that in every dictionary it is two or more? I understand the World War II veteran example, but that is an uncommon usage. The question is here, where in the specification does it take us away from the most common usage? Sure, Your Honor. Let me address that. As the Board found, right, the Board looked at the context of the claim in light of the specification. In doing so, it also looked at the expert testimony, and it credited the testimony of Samsung's expert on this point over Kinetic's expert, and that you can find at, for example, A32. But the expert didn't rely on anything except that type of example, right? Sure, Your Honor. He, of course, looked at the patent. He looked at the claim, and in light of the claim language and the specification, he provided his opinion from the perspective of one of skill and the art, and the Board credited that testimony over their expert testimony, and that's entitled to deference under this Court's case law. And also, I think what's telling here, Your Honor, is the person who testified, not if the expert testimony isn't relying on anything other than just an Ipsy-Dixit opinion. So, Your Honor, here the expert testimony did rely on the specification. It relied on the claim language. So it wasn't simply relying on sort of blanket statements. And here, again, as the Board, I think the Board looked at the And I think, Your Honor, perhaps the issue goes back to the detecting, what does detecting orientation mean? Because depending on how this Court construes that, this limitation of each falls away, right? Because if the Court agrees with the Board that detecting orientation for a slow motion phase, it includes detecting orientations, right, during the phase, as the Board found, then the issue of each goes away, Your Honor. And let me explain why the Board did correctly construe the detecting orientation for each slow motion phase. So then you're saying that the singular word can become plural. That's right, Your Honor. That's right. So here, if you look at the plain meaning of the claim, the plain meaning simply supports, it encompasses multiple orientation detections for a given slow motion phase. Again, when the Board construed the claims, it was looking at the claim language and the specification from the perspective of one of Gill and Liard, and it repeatedly credited the testimony of Samson, the expert, on these issues over Kinetic's experts. Now, it's telling that Kinetic points to figure three of the patent. We did not hear a single thing about figure two of the patent, and that we believe is key to the whole claim construction issue. In fact, I think Kinetic, I heard counsel go as far as saying there is no support in the specification for the Board's construction, but I think figure two is fatal to their argument. And again, the Board looked at figure two, and this is at Appendix 28 to 29 of the Board's opinion. It credited the testimony of Dr. Abowd, Samson's expert, in terms of interpretation of figure two. And if you look at figure two, for each XYZ orientation, right, for each data that's provided to the orientation detector, there is an orientation that the detector provides. And that testimony, again, was consistent, or that reading of the figure was consistent with Dr. Abowd's testimony. You can find that at Appendix 1438 to 40. It was also, I think what it's telling here, it was also consistent with the testimony of Kinetic's expert, and you can find that at Appendix 1493 to 1497. In terms of figure three, yes, they like to point to figure three, but as we pointed out, figure three does not really go to the operation of the orientation detector. Figure two is what goes to the orientation detector. And even if you look at figure three, you can see during a slow-motion state, as it's referred to in the description for figure three, there are multiple orientations detected during that phase. So, plainly, the specification here is consistent with the board's construction. And I also think it's telling, Kinetic says, well, if you adopt the board's construction, the purpose of the invention would be destroyed. We disagree. I think the problem that they have here is that the claims are just worded too broadly. They chose certain language for the claims. They are asking this court, as they did ask the board, to rewrite the claim, and this court should not do that, especially under the broadest reasonable interpretation standard that applies here. They could have amended the claim. They chose not to. But they're asking this court to rewrite the claim language. Unless the court has any questions on the orientation limitation, I'll turn to the sequence limitation. Can I ask you to turn to something else? Sure, you are. As it relates to the obvious conclusions, I know you try to argue that this is harmless error, but the board had said some things about the law that seems a bit crazy, doesn't it, when they said that Samsung had absolutely no burden to establish a reasonable likelihood of success from the combination? Yes, Your Honor. I do believe the board's decision there is not perfectly worded. And I'll also point you to A-77, where the board said we do not agree that petitioner ignores its burden. So I would say it's certainly not clear. But even if you said the board erred in that regard in terms of not having the precise language, as this court has held, for example, in the Intelligent Biosystems case, this court reviews judgments, not opinions, and it will affirm the board where it has made sufficient factual findings to support its judgment. Well, that's the problem, is that the board's motivation to combine analysis actually makes it seem like they did completely ignore any issue with respect to reasonable likelihood of success. They simply said that because your expert said, well, you could save power by combining these two, that therefore that creates a motivation. And it did not even look at whether or not putting the two together could reasonably lead one to believe that you could practice the claims. So, Your Honor, let me address that. I do believe there are sufficient factual findings in the board's opinion that would allow this court to affirm the board's decision on obviousness here. So if I, with your indulgence, if we can spend a few minutes going through the board's decision, and I'll show you how we believe the board did address this issue. So if we start with the board's opinion, for example, it started with this analysis at Appendix 71. There, the board first analyzed Samsung's arguments and evidence in its petition, and that's at A71, Appendix 71 to 73. In doing so, the board, I think it's telling, they actually quoted from Samsung's expert testimony on this issue. And Appendix 72, the board noted the two rationales provided by Samsung, and I think this is the key, Judge O'Malley, at Appendix 72 at the bottom, when it was noting the power-saving rationale that you also mentioned to, the board quoted from the declaration of, declaration testimony of Dr. Ebal at the bottom, where he said, such a modification of the combined Linjama and Lierman system based on Tesaki would have been as straightforward for a person with a four-letter skill in the art to implement. This goes on to Appendix 73. And then Dr. Ebal did talk to… Well, he said it would be, wait, when you read his testimony, he said it would be straightforward to implement, but then he explains by basically reconfiguring all of the aspects of it. And the fact that the two references might not teach a way doesn't mean that the fact that they do it in completely different ways is irrelevant. You don't have to get to it teaching a way to take that into consideration with respect to a reasonable likelihood of success. So, Your Honor, two responses to that. And I apologize for interrupting. So, two responses to that. One was that with respect to reasonable expectation of success, I think the testimony that bridges pages Appendix 72 to 73, that goes to the reasonable expectation of success, right? Dr. Ebal is explaining how easy it would have been for one of skill in the art to configure these systems. Remember, what we're talking about in terms of… Wait a second. Did he specifically address reasonable expectation of success in those terms? So, Your Honor, he did not use the words reasonable expectation of success, those precise words. But I think if you look at the testimony, like I said, for example, it's Appendix 919, Paragraph 154. That testimony goes to the reasonable expectation of success point. So, we do believe there was enough in the record for the Board to affirm. And I think going back to what Judge O'Malley was saying, this was not contested by Kinetic. Their expert did not come in and say, well, one of foreigners would not have been able to configure the system to arrive at the combination. All he said, and Judge O'Malley, now I'll address your teaching of a point. All they said was that, well, Sasaki teaches away. But I think that argument fails for three reasons, Judge O'Malley. First is that if you look at what the Board did, they looked at the testing in regularly, as this Court has pronounced the teaching of a test, and they said Kinetic's argument just doesn't fit that test. But it doesn't have to fit the teaching away test to be relevant that the two are completely different and opposite. And so, I'll actually get to that point next, Your Honor. And I think here's the key to the teaching of a findings and this whole argument on motivation to combine. The Board made factual findings that one of skill would have been motivated to combine the two references, Linjama and Sasaki, to arrive at the claimed invention. And in doing so, the Board necessarily pointed out that they did not dispute the power-saving motivation that was provided by Dr. Abowd. And this is the key, Judge O'Malley, on this point, which is my last point on this teaching of a argument. If you look at Sasaki, they do say that they are fundamentally different, but there is a piece of Sasaki that our experts cited to, and that I think is key here. Sasaki specifically teaches monitoring motion and orientation simultaneously, and that's at Appendix 1293. And the Board actually relied on this at Appendix 75. It's cited to Appendix 1293, Column 9, Lines 5 through 11. Not only did the Board rely on it, it actually credited Dr. Abowd's testimony on this point, and you can find that at Appendix 76. So here, they can hardly argue, in our minds, based on the Board's opinion, that the Board, there's enough here for this court to affirm the obviousness determination. So, unless you have any other questions on this, I'd like to quickly go back to the sequence detector limitation and see if the court has any other questions there. Okay. So, with respect to the sequence detector limitation, again, here, the Board did give the claim term its broadest reasonable interpretation in light of the specification and the intrinsic evidence. And I think it's telling what Kinetic wants this court to do, is it wants to import certain limitations from the specification. For example, for this limitation, it wants this court to say that the detected orientations must be from two or more slow-motion phases, and they must be separate, and you must have a fast-motion phase that separates the two adjacent slow-motion phases. And then, also, it wants this court to say, well, the system must preclude or filter out any orientations detected during a fast-motion phase. None of those limitations are in the claim. Again, these claims are broadly drafted, and if you look at the intrinsic evidence, it doesn't support those limitations. And I think I'll just make one point with respect to the sequence limitation that I believe is fatal to the argument. If you look at Claim 11, Claim 11 actually recites multiple phases. It recites multiple slow-motion phases separated by a fast-motion phase. We did not hear anything from the other side regarding Claim 11 on the merits. So we believe that is fatal to their argument. And I think if you look at Appendix 36, where the board actually reasoned, provided its opinion on this issue, the board gave an example of a sequence which would have a fast sequence, and then you would have two slow sequences and a fast sequence. And as the board explained, the claims certainly cover that sequence. And the prosecution history here, while certainly this court should look at it, it does not compel the conclusion that they want this court to arrive at. And I'll just make one last point with respect to the prior art. I heard counsel say, and Judge O'Malley, this was in response to your question, they said, well, if this court was to amend the claim construction based on any of the different arguments they made that this court should reverse, we don't believe that would be improper. We believe, depending on, of course, what the court does here, we believe the court should affirm the board's claim construction. But depending on what the court does, the Linjama-Tosaki ground would cover some of those interpretations. So, for example, if the court says the claims are limited to have only sort of orientation that are detected during slow motion phases and that you preclude fast orientations during fast motion phases, the Linjama-Tosaki ground would cover that. So I really think it depends on what the court does. Your Honour, did you have a question? No, I think that was your signal that your time is up. OK, well, thank you, Your Honour. We would respectfully ask that the court affirm. Thank you. Mr. Haldeman? So one issue that Samsung brought up was this Claim 11 claim differentiation argument, which, first of all, it waived. This was never raised below. And second of all, it applies to the limitation itself. Samsung conveniently crops out that Claim 11 is limiting the profile description. It is not limiting the sequence of the detected orientations. So their claim differentiation argument is not even relevant to the disputed limitations at issue. Samsung frequently relies on its experts' testimony that the board credited. But the board's analysis was very circular, and it really relied on Samsung's expert because Samsung's expert happened to support its overly broad claim construction. Further, Samsung takes Dr. Mohapatra's testimony... Mr. Haldeman? Yes, Your Honour? Before the board, did you argue that there was a lack of reasonable expectation of success? I believe that we did. Okay. Could you tell me where? If you give me a second. We certainly raised it in our SIR reply. I'm just trying to pull that up. So at least on page 25 of our SIR reply, we argued... It's 25 of our SIR reply, but I don't see an appendix page on my copy. Okay. 560 to 596 in your SIR reply. 560 to 596. On the same page 25? Yes, page 25. Petitioner ignores its burden to show that a FACITA would have had a reasonable expectation of success in combining the references. Okay. All right. One final thought. We're out of time. Thank you. The only other point that I wanted to bring up quickly... Well, two quick points. SAMHSA takes Dr. Mohapatra's testimony out of context repeatedly. He said that orientation signals may be measured multiple times over a phase, but that orientation is only detected once for each phase. And this is all over his deposition. It's on, for example, APPX 1495. During the same phase, the readings are taken multiple times, but the orientation for that phase is only one orientation. Okay, Mr. Haldeman, I think we're out of time. My colleague has a further question. Okay. Hearing none, thank you, Mr. Haldeman. Thank you, Mr. Modi.  Thank you, Your Honors.